### NEW YORK & CUBA MAIL S. S. CO. v. GUAYAQUIL & Q. R. CO.

(Circuit Court of Appeals, Second Circuit. December 15, 1920.)

No. 90.

1. **Contracts ☞211—Time generally of essence in commercial contracts.**
   In commercial contracts, time is generally of the essence of the contract.

2. **Shipping ☞105—Notice of readiness to load about certain date held definite notice.**
   Where the shipping contract provided the steamship company should give the shipper notice of readiness to load, a notice that the vessel would sail for the loading port about a certain date, and be ready to load on the stated date thereafter, bound the steamship company to have the vessel ready to load on the stated date.

3. **Shipping ☞104—Contract made with reference to rules at port of loading.**
   A contract for the shipment of coal from a specified port must be understood as having been made in view of the custom of the port with reference to loading.

4. **Shipping ☞105—Cargo need be furnished only in reasonable time after ship's delay in readiness to load.**
   Where the shipper had a cargo ready for the vessel on the date he was notified she would be ready to load, but the vessel was not ready at that time, the shipper is only bound thereafter to furnish a cargo for the vessel within a reasonable time after she is ready to load.

5. **Shipping ☞145—Dead freight allowed, where shipper's agent required sailing without full cargo.**
   A vessel which was ordered by the fuel company, which sold a cargo of coal to the shipper, into her berth at a time when a full cargo was not available, and when she could not wait therein for the rest of the cargo, or return for more, is entitled to recover from the shipper dead freight on the amount of cargo not furnished, less any expense saved by not carrying that part.

Appeal from the District Court of the United States for the Southern District of New York.

Libel by the New York & Cuba Mail Steamship Company against the Guayaquil & Quito Railroad Company to recover damages for delay in loading and dead freight on shortage of cargo. Decree for respondent, and libelant appeals. Modified and affirmed.

Burlingham, Veeder, Masten & Fearey, of New York City (Van Vechten Veeder and J. L. Galey, both of New York City, of counsel), for appellant.

John Thomas Smith, of New York City (F. A. Gaynor, of New York City, of counsel), for appellee.

Before WARD, ROGERS, and MANTON, Circuit Judges.

---

WARD, Circuit Judge. The Guayaquil & Quito Railroad Company and the New York & Cuba Mail Steamship Company, through the International Shipping Corporation, as brokers, entered into a contract as follows:

"The Guayaquil & Quito Railroad Company,

"25 Broad Street, New York, March 2, 1917.

"Joseph C. Quirk, Esq., Sec'y & Mgr., International Shipping Corp'n., No. 11 Broadway, New York City—Dear Sir: We are in receipt of your letter of the 1st instant, offering us space for up to 2,000 tons of coal for late March or early April loading, the freight rate to be $13.00 per ton to Guayaquil, Ecuador, the coal to be loaded either at Norfolk or Newport News, at our option.

"We hereby accept your offer for the full 2,000 tons, it being our understanding that you are to give us two weeks' notice of the name of the vessel and of the date she will be ready to start loading.

"Yours very truly, E. H. Norton, President."

"March 2, 1917.

"The Guayaquil & Quito R. R. Co., 25 Broad Street, New York City—Gentlemen: Attention of Mr. Norton. We thank you for your letter of March 2d, accepting our offer to carry 2,000 tons of coal at $13.00 a ton from Hampton Roads to Guayaquil.

"It is understood that we will give you two weeks' notice of the date the boat will be ready to start loading, but not necessarily the name of the vessel.

"Yours very truly, Secretary & Manager."

The steamer subsequently named for the contract was the Manzanillo, but the parties later substituted the Jalisco for a cargo of 2,500 tons. March 30 the Steamship Company gave notice of readiness to load as follows:

"New York, March 30, 1917.

"Quayaquil & Quito Railroad, No. 25 Broad Street, New York City. Attention of Mr. Norton—Gentlemen: Confirming 'phone conversation of this morning, asking if you could deliver to us 2,500 tons of coal, instead of 2,000 tons, as originally contracted for: This is to advise that we will have the S. S. Jalisco sailing from this port about April 14th ready to receive the coal in Hampton Roads April 16th. * * *

"Yours truly, Joseph Hodgson, Freight Traffic Manager."

The Railroad Company answered this letter as follows:

"New York, April 2, 1917.

"N. Y. & Cuba Mail S/S Co., Pier 14, E. R., New York City. Attention of Mr. Hodgson, Gen'l Frt. Agt. Gentlemen: Referring to your letter of March 30th, and confirming our telephone conversation of this morning, we would advise you that we have made arrangements with the Clinchfield Fuel Company to deliver 2,500 tons of coal, instead of 2,000 tons, as originally contracted for—same to be delivered to the S/S Jalisco, which we understand will be ready to receive this coal at Hampton Roads about April 16th. It is our understanding that the freight rate on this coal is to be $13.00 per ton of 2,240 lbs.

"Very truly yours, The Guayaquil & Quito Railway Company,

"By Geo. O. Houston, Purchasing Agent."

[1, 2] In commercial contracts time is generally of the essence of the contract, and we think the Steamship Company was bound by her engagement to be ready to load April 16th. The use of the word "about" in this letter did not alter the contract previously entered into.

[3] All coal is brought to the piers at Lambert's Point, Norfolk, by the Norfolk & Western Railroad Company, and is loaded by that com-

pany by chutes from trestles to the steamers calling for it, in accordance with its own rules and regulations. This was the custom of the port, and the contract must be understood as having been made in view of it. The material regulations in this case are:

"5. Vessels shall be berthed according to their respective classes and in order of register at the pier office, as between themselves, provided cargo is available. * * *

"7. A vessel agent, having two or more vessels ready to load, may direct reversal of turn at piers as among his own vessels, except that a vessel of greater tonnage than the one to be displaced shall not be run around a vessel of another agent or shipper standing ahead of it. Vessel agents may give directions verbally or in writing. If given verbally, they must be confirmed in writing."

The Railroad Company had a contract with the Clinchfield Fuel Company for delivery of from 20,000 to 25,000 gross tons of standard grade of Clinchfield screened locomotive coal, screened over not less than one-inch screens to the Railroad Company's steamers, which were to load in turn in accordance with the rules and regulations of the Norfolk & Western Railroad Company.

The Clinchfield Fuel Company had at Lambert's Point much more coal than the Jalisco called for April 16, 17, 18, and 19 up to 3:45 p. m., and had she registered with the Norfolk & Western Railroad Company as ready to load during that time she would have received a full cargo. But the steamer Middlesex, with which neither the Steamship Company nor the Railroad Company had anything whatever to do, registered April 19 at 3:45 p. m. and completed loading a cargo of 7,548½ tons of the same coal April 23 at 2 a. m. There were then left on hand only 742 tons.

The Jalisco registered ready to load Sunday, April 22, a 8 a. m., but as no work is done on Sunday she could not have begun loading, even if coal had been there, before April 23 at 7 a. m. It will therefore be seen that the Middlesex was entitled to be loaded before the Jalisco under the rules of the Norfolk & Western Railroad Company. But if this were a readiness to load in conformity with the contract the shipper would have been bound to furnish cargo then.

The claim of the Steamship Company is, first, for damages in the nature of demurrage for delay between April 22 at 8 a. m. and April 26 at 8 p. m., and, second, for dead freight on 306 tons, which was not at the pier when the steamer left with a cargo of 2,194 tons.

[4] The duty of the shipper is to have his cargo ready when the ship arrives in accordance with his contract, and any delay until he furnishes it is at his risk. Where, however, as in this case, the ship arrives after the agreed time, and in the meantime, by the rules and regulations under which the steamer is to load, the cargo intended for her has been delivered to another steamer entitled to load in turn before her, the delay must be charged to the steamer's breach of her contract as to readiness to load. The shipper in such case is only bound to furnish a cargo within a reasonable time thereafter, in view of all the circumstances of the case. The Steamship Company has not shown that the Railroad Company failed to do so.

[5] Whether the steamer is entitled to dead freight depends upon

whether she was ordered into her berth by the Steamship Company or by the Railroad Company. She was ordered in by the Fuel Company, which was the agent of the Railroad Company in furnishing the cargo. She could not have occupied the berth awaiting the arrival of more coal, nor could she leave and come back again. Therefore the District Judge should have allowed the libelant freight on 306 tons, less any expenses saved by the steamer because of not carrying it.

As so modified, the decree is affirmed.